IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILLIE MAE THOMAS as daughter and next friend of Lula Cayson, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACT. NO.  2:17cv400-WKW (WO) |
| ABCO MONTGOMERY SOUTH HAVEN OPERATING COMPANY LLC doing business as South Haven Health and Rehabilitation Center, *et al.*, | ) ) ) ) ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I. INTRODUCTION**

Plaintiff Willie Mae Thomas ("Thomas"), as daughter and next friend of Lula Cayson ("Cayson"), filed this action in the Circuit Court of Montgomery County, Alabama on April 25, 2017, alleging violations of the Alabama Medical Liability Act of 1987 ("AMLA"), ALA. CODE § 6-5-540, *et seq.*.  The defendants are ABCO Montgomery South Haven Operating Company d/b/a South Haven Health and Rehabilitation Center ("South Haven"), SSC Montgomery South Haven Operating Company, LLC, ("SSC Montgomery Operating"), and South Haven Health and Rehabilitation Administrator Larry Huffman ("Huffman").  On June 21, 2017, the defendants removed the case to this court solely on the basis of diversity of citizenship jurisdiction.  *See* 28 U.S.C. § 1441 and 28 U.S.C. § 1332.

A defendant may remove to federal court any civil action over which the court would have original jurisdiction.  28 U.S.C. § 1441(a).  This court has jurisdiction over actions

involving citizens of different states provided that all plaintiffs are diverse from all defendants, *see Strawbridge v. Curtiss*, 7 U.S. 267 (1806), and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(b).

Now pending before the court is the plaintiff's timely motion to remand in which she argues that there is not complete diversity of the parties because defendant Huffman is a proper party in this action, is an Alabama citizen, and his presence defeats diversity jurisdiction. (Doc. # 6). The defendants respond that while Huffman is a citizen of Alabama, his presence as a named defendant does not defeat diversity jurisdiction because he was fraudulently joined as a defendant. (Doc. # 1). According to the defendants, "the stated cause of action against Mr. Huffman is simply not cognizable." (Doc. # 8). Thus, the defendants argue that the court should disregard the citizenship of Huffman when determining whether the case is properly removed on diversity grounds. Upon consideration of the motion to remand, the briefs filed in support of and in opposition to the motion to remand, and for the reasons which follow, the court concludes that the motion to remand should be granted, and this case should be remanded to the Circuit Court of Montgomery County, Alabama.

## II. STANDARD OF REVIEW

"Any civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court." *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1356 (11th Cir. 1996) (citing 28 U.S.C. § 1441(a)), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). "When a defendant removes a case to federal court on diversity grounds, a court must remand the matter back

2

to state court if any of the properly joined parties in interest are citizens of the state in which the suit was filed." *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). When a case is removed to federal court, a removing defendant's burden to establish federal jurisdiction is "a heavy one." *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). Any questions or doubts are to be resolved in favor of returning the matter to state court on a properly submitted motion to remand. *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994).

However, "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Triggs v. John Crump Toyota Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998).

> To establish fraudulent joinder of the non-diverse defendant, the removing party must satisfy a "heavy" burden of proving by clear and convincing evidence that: "(1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court."[1]

*Ullah v. BAC Home Loans Servicing LP*, 538 F. App'x 844, 845-46 (11th Cir. 2013) (footnote added). *See also Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011); *Crespo v. Coldwell Banker Mortg.*, 599 F. App'x 868 (11th Cir. 2014).

"If there is *even a possibility* that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that

---

[1] There is a third situation in which the Eleventh Circuit has recognized fraudulent joinder "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Triggs*, 154 F.3d at 1287. The parties do not suggest that this type of fraudulent joinder is applicable in this case.

3

the joinder was proper and remand the case to the state court." *Triggs,* 154 F.3d at 1287 quoting *Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440-41 (11th Cir. 1983).[2] The plaintiff "need not have a winning case against the allegedly fraudulent defendant; [she] need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Triggs*, 154 F.3d at 1287. *See also Stillwell*, 663 F.3d at 1333. The court must "evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties" in the plaintiff's favor. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). Moreover, the court is "not to weigh the merits" of the plaintiff's claims "beyond determining whether [the claim] is an arguable one under state law." *Stillwell*, 663 F.3d at 1333. Finally, when considering a fraudulent joinder claim, the court utilizes the state rather than federal pleadings standard. *Stillwell*, 663 F.3d at 1334; *Ullah*, 538 F. App'x at 846.

### III. DISCUSSION

The defendants assert that the citizenship of Huffman should be disregarded because Thomas cannot establish a cause of action against him under the AMLA, and thus, he was fraudulently joined. It is undisputed that the defendants are traveling under the "no cause of action" theory of fraudulent joinder.[3] Thomas, on the other hand, contends that she has pled a claim against Huffman under the AMLA sufficient to establish a cause of action against

---

[2] Superseded by statute on other grounds as stated in *Georgetown Manor, Inc. v. Ethan Allen, Inc.*, 991 F.2d 1533 (11th Cir. 1993) and *Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329 (11th Cir. 2011).

[3] The defendants do not assert that there is outright fraud in the plaintiff's pleadings.

4

him.[4]  The question for the court, therefore, is whether there is any possibility that the plaintiff could maintain ALMA claims against Huffman in state court.  Because the court concludes that there is a possibility that the state court would find that the plaintiff has stated a cause of action under the ALMA against Huffman, this case is due to be remanded to the Circuit Court of Montgomery County

> In her complaint, the plaintiff alleges the following facts.
>
> > On October 20, 2016, Lula Cayson was discharged from Baptist East hospital in Montgomery, Alabama and admitted to South Haven as a nursing home resident.  At the time of her discharge from Baptist East hospital, she had been prescribed intravenous Vancomycin in order to treat a staph infection. . . . [O]rders were also given at Baptist hospital for basic metabolic panels as "Chem 7's" which are lab tests performed in order to gauge among other things, a person's chemistry including lab values indicating renal function in order to ensure that it is safe to continue to administer the drug. More specifically, the orders related to the administration of IV Vancomycin and Chem 7 labs with respect to Lula Cayson were such that she was supposed to receive administrations of Vancomycin over a 12 day period, and was supposed to have Chem 7 lab test done every 4 days in order to ensure that it was safe to continue to administer the drug. Despite these orders, and despite the administration of Vancomycin while Ms. Cayson was a resident at South Haven Montgomery, the Chem 7 lab tests were never conducted a single time during the period which she was taking Vancomycin.
> >
> > Between the period of October 20, 2016 and November 19, 2016, Ms. Cayson was required to receive her nutrition and hydration via a Percutaneous Endoscopic Gastrostromy ("PEG") tube. During this period of time, the Defendants negligently and/or wantonly failed to ensure that her PEG tube was properly placed, that it was properly maintained and flowing freely so that she could receive the appropriate amounts of nutrition and hydration in order to keep her nourished and hydrated.  These failures, all in violation of the Alabama Medical Liability Act as breaches of the applicable standard of care,

---

[4] In her reply to the defendants' response to her motion to remand (doc. # 9), the plaintiff asserts that she has pled state law claims of negligence against Huffman in addition to her claims pursuant to the Alabama Medical Liability Act. Because the court concludes that the plaintiff's motion to remand is due to be granted, the court pretermits discussion of this issue.

>combined and concurred with other negligent acts and omissions described hereinbelow to cause severe and permanent injuries to Ms. Cayson as described below.

(Doc. # 1 at ; Doc. # 6, Ex. 1 at 5-6)

As a result of the defendants' failures to properly care for Cayson, the plaintiff alleges that Cayson suffered dehydration, acute renal failure, organ damage, malnutrition and pressure sores. (Doc. # 6, Ex. 1 at 7). While Thomas does not make specific allegations against Huffman, she repeatedly asserts that the defendants including Huffman failed to provide adequate nursing care and services to Cayson; failed to "hire, train and supervise employees so that such employees delivered care and services" to Cayson; failed to adequately supervise nursing staff; failed to properly assess, evaluate and monitor staff; failed to provide adequate qualified staffing; and failed to properly evaluate, screen and test staff to insure they were competent to provide care. (*Id*. at 11-15).

The defendants' fraudulent joinder argument rests on the premise that as the nursing home administrator, defendant Huffman is not as a health care provider within the meaning of the AMLA, ALA. CODE § 6-5-542, and thus, the plaintiff cannot establish a claim against him.

ALA. CODE § 6-5-542(1) defines a "health care provider" as "[a] medical practitioner, dental practitioner, medical institution, physician, dentist, hospital, or *other health care provider* as those terms are defined in Section 6-5-481." (emphasis added). ALA. CODE § 6-5-481(8) defines "other health care provider as "[a]ny professional corporation or any person employed by physicians, dentists, or hospitals *who are directly involved in the delivery of*

6

*health care services.*" (emphasis added). The defendants assert that because Huffman did not directly deliver health care services to Cayson, he does not meet the definition of "other health care provider." The plaintiff, on the other hand, contends that because Huffman was "used or engaged" by South Haven nursing home[5] to deliver health care to its residents, he is an "other health care provider" as contemplated by the Act.

Although the Alabama Supreme Court has not addressed the issue of whether a licensed nursing home administrator qualifies as a health care provider encompassed within ALA. CODE § 6-5-481(8), it has examined when others qualify as health care providers under the statute. In *Cackowski v. Wal-Mart Stores, Inc.*, the Alabama Supreme Court concluded that a pharmacist was an "other health care provider" within the meaning of the AMLA because a pharmacist "is inextricably linked to a physician's treatment of his patients, [and] the dispensing of drugs is an integral part of the delivery of health care services to the public." 767 So.2d 319, 324-25 (Ala. 2000). *See also Ex parte Rite Aid of Ala., Inc.*, 768 So. 2d 960, 962 (Ala. 2000) ("based on the rationale of *Cackowski*, we hold that Rite Aid, as the operator of a pharmacy, is included within the AMLA's definition of "other health care provider."). In *Tuscaloosa Orthopedic Appliance Co., Inc. v. Wyatt*, the Court held that orthotists are "health care providers" because they "provide services as prescribed by physicians for their patients." 460 So.2d 156, 161 (Ala. 1984).

---

[5] There is no dispute that South Haven Health and Rehabilitation Center as a nursing home qualifies as a hospital, and is therefore covered by the provisions of the AMLA. *See Husby v. South Alabama Nursing Home, Inc.*, 712 So. 2d 750, 753 (Ala. 1998); *Ex parte Northport Health Serv., Inc.*, 682 So. 2d 52, 55 (Ala. 1996).

Finally, in *Crowne Inv., Inc. v. Reid*, the court specifically held that the AMLA applies to a professional corporation that was under contract to manage a nursing home. 740 So.2d 400, 405 (Ala. 1999). In *Crowne*, the management company was responsible for hiring employees as well as supervising, managing and operating the nursing home. Because Crowne Management was employed to manage the nursing home, the court concluded that it was "directly involved in the delivery of health-care services. Therefore, it is a "health care provider" as defined by the AMLA." *Id*. at 403. T

The court finds the reasoning of these cases persuasive when deciding whether the state court could find that Huffman was a health care provider under the AMLA. The plaintiff alleges that Huffman was responsible for hiring and supervising employees at South Haven. She also alleges that, as the administrator of the facility, he was responsible for ensuring that patients received care in accordance with physicians' orders. His responsibilities are analogous to the responsibilities of Crown Management which, because it was directly involved in the delivery of health care services, was deemed a health care provider within the purview of the AMLA.

Relying on *Rudolph v. Barber*, 2013 WL 1084291 (S.D. Ala. 2013) and *May v. Culliver*, 2012 WL 603315 (S.D. Ala. 2012), the defendants argue that because Thomas has not alleged a causal connection between Huffman's actions and Thomas's injuries or damages, Thomas has failed to state a colorable claim against him. These cases are inapposite because these cases involve claims brought pursuant to 42 U.S.C. § 1983 challenging the denial of medical care under the Eighth Amendment to prisoners. The claims

in those cases in no way implicated the AMLA.

Accordingly, after careful consideration, the court concludes that the defendants have failed to meet the heavy burden of showing that there is no possibility that Thomas cannot succeed on her AMLA claims against Huffman. The defendants have not met their burden of establishing "by clear and convincing evidence" that no Alabama court could find that the allegations against Huffman are insufficient to assert a claim against him as a health care provider under the AMLA. *See Henderson*, 454 F.3d at 1284. Therefore, the court cannot conclude that the Alabama defendant Huffman was fraudulently joined. Consequently, there is not complete diversity of the parties, and the court does not have jurisdiction over these proceedings.

## IV. CONCLUSION

Accordingly, for the reasons as stated, it is the RECOMMENDATION of the Magistrate Judge that the plaintiff's motion to remand (doc. # 6) be GRANTED and that this case be REMANDED to the Circuit Court of Montgomery County, Alabama. It is further

ORDERED that **on or before April 6, 2018**, the parties may file objections to the Recommendation. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised this Recommendation is not a final order; therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the

9

District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11thCir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 23rd day of March, 2018.

                                                     /s/Charles S. Coody
                                       CHARLES S. COODY
                                       UNITED STATES MAGISTRATE JUDGE